RYDER, Judge.
All happy families resemble each other, each unhappy family is unhappy in its own way.[1]
Nita and Eugene Bass appeal from the order cancelling a certain deed to real property and declaring appellees to be owners of the land. We reverse.
Appellees Ida Carlson, widow of John E. Carlson, and Raulerson, Danley, Rogers, Whitehead and Billstone, daughters of John E. Carlson, sued Nita Bass, another daughter of Carlson, and her husband seeking cancellation of a deed. In three counts, appellees sought to determine that the property subject of the litigation was the homestead of John E. Carlson at relevant times, and therefore the deed was void because Ida Carlson did not join. Count IV sought a determination that the deed was procured by undue influence, Count V sought judgment for value to improvements to the land alleging unjust enrichment, Count VI alleged that the deed was procured by fraud, and Count VII asked the court to declare that Ida Carlson had a special equity in the land. Count VIII asked the court to declare that the deed constituted a resulting trust for the use and benefits of appellees, and finally, Count IX requested that the court enforce a 1957 oral agreement among the heirs of John E. Carlson to divide the land between them. Appellants counterclaimed seeking a judgment quieting title to the land.
*411 John E. Carlson acquired title in his sole name to the forty-acre tract of land during 1939. For parts unknown and unchartered by the record, Carlson left his wife and children on the farm in 1948. In 1957, the county court entered an order of presumption of death, holding that Carlson was presumed dead pursuant to statutes then in effect. Subsequently, a new house was constructed on the property for Ida Carlson to live in, and appellees and appellants had discussion as to division of the property. During 1958, the parties agreed that appellants should move onto a portion of the property so as to be near Ida Carlson. In 1959, a written instrument was executed whereby Ida Carlson and the Carlson daughters conveyed to appellants a four-acre tract of the forty acres. The document contained a notation that it was an advancement to appellant of her full interest in the estate of John E. Carlson. Appel-lees presented evidence that at the time of the execution there was an oral agreement between the parties that Nita Bass agreed to convey to them the remaining property other than the aforesaid four acres. A loose understanding existed wherein the remaining property would be divided between all of the children and Ida Carlson.
Arising from his legal grave, John E. Carlson inexplicably returned to Plant City in early 1964, and a family reunion occurred in appellants’ home. However, because of his continued errant ways, no member of the family regularly communicated with or had self-initiated contact with Carlson other than appellants.
In 1976, at the instance of Ida Carlson, an order was entered revoking the presumption of death and Ida Carlson was discharged as administratrix. Subsequently, and in March of 1976, John E. Carlson conveyed the identical four acres of the land to appellants. But here’s the rub — in May of 1976, Carlson also conveyed to appellants the balance of the forty-acre tract. Appellants, however, orally agreed to give Ida life tenancy. Carlson died in 1979.
Because of homestead exemption filed on the application of Ida Carlson, no real estate taxes were paid on the property until 1967. The property was assessed in the name of John E. Carlson. Commencing in 1967 or 1968, despite frustration, appellant tried to see after her father, helped him find places to live, nursed him, cared for him and helped to manage his affairs.
The court found that the parties had agreed in 1958 or 1959 that each daughter should receive four acres of land and that Ida Carlson would receive the remainder. The court found further that the agreement had been partially performed by the conveyance to appellants. Finding that the agreement should be enforced, the court cancelled the deeds to appellants and declared appellees to be the owners of the land described in the exhibit other than the four acres conveyed to appellants in 1958.
The court below apparently felt that the moral issues favored appellees. Unfortunately, and with due respect to the highly respected and greatly admired trial judge, we are not able to form any legal basis which would permit his order to stand. No assistance therein was rendered to us by appellees who did not trouble themselves to participate in this appeal.
From the record and arguments before us, nothing appears which would have prevented John E. Carlson from alienating the land in 1979 to appellants or anyone else. Homestead status did not attach to the property at that time since neither the owner nor any dependents resided on the property in a “head of household” relationship. Passmore v. Morrison, 63 So.2d 297 (Fla.1953); In Re: Estate of Van Meter, 214 So.2d 639 (Fla.2d DCA 1968), aff’d, 231 So.2d 524 (Fla.1970). No facts, none whatsoever, were produced to support ap-pellees’ allegations of undue influence, unjust enrichment, fraud, special equity or a resulting trust; and we note that the lower court did not grant relief on those grounds. The basis for the ruling below was enforcement of an oral agreement to divide the land among the supposed heirs, entered into when the order of presumption of death was enforced. However, John E. Carlson’s reappearance voided that assumed agree *412 ment because none of the parties thereafter had any power to determine who owned the land. The conveyance by appellees to appellants became invalid when the presumption of death was revoked, since appellees then had no interest in the land to convey. The subject of the agreement, the estate of John E. Carlson, no longer existed. The agreement was voided because it was based on the mutual mistake of fact that John E. Carlson was dead and that the parties had a land interest which could be conveyed. See Jones v. Walter C. Hardesty, Inc., 100 Fla. 155, 129 So. 497 (1930). The later conveyance by Carlson to appellants was thus not affected by the voided, presumption of death or distribution agreement among the supposed heirs.
The order below is REVERSED and the case REMANDED for entry of judgment for appellants.
HOBSON, A.C.J. and CAMPBELL, J., concur.

. L. Tolstoy, Anna Karenina, at 1 (1918).