617 So.2d 1109 (1993)
Deanna Joyce ANDERSON, Appellant,
v.
Ray Alfred ANDERSON, Appellee.
No. 91-3117.
District Court of Appeal of Florida, First District.
May 7, 1993.
Raymond E. Makowski, Jacksonville, for appellant.
Marlin M. Feagle, Lake City, for appellee.
BARFIELD, Judge.
Wife, Deanna Joyce Anderson, appeals from a final judgment of dissolution of marriage. The husband, Ray Alfred Anderson, files a cross appeal. Both parties raise several issues on appeal. We find that the only issue which has any merit and will be discussed herein is wife's assertion that the trial court erred in determining the amount and type of alimony due to the wife.
In her petition for dissolution of marriage the wife alleged that she was in need of both rehabilitative and permanent alimony. The husband denied she needed any support. At trial the wife contended that only permanent alimony would satisfy her support needs. The husband, while conceding *1110 some support was needed by the wife, contended that only rehabilitative support was required. The trial judge awarded 23 years of alimony, most of which terminated at the end of 5 years. The award does not equate to permanent alimony and does not conform to any actual or implied basis for rehabilitative alimony that we can discern from the record.
Deanna Anderson and Ray Anderson were married in Tennessee in 1968 while the husband was in the navy. Two children were born of the marriage: Raymond in 1969, and Bradley in 1974.
The husband was attending college at the time of the marriage. He graduated with a bachelor of science degree in physical therapy in 1972. While he was in college, the wife worked as a secretary, helping with living expenses. College costs were paid by various grants, the GI Bill, and an inheritance received from the husband's father.
The husband worked in various jobs during the marriage. The wife testified that they were required to make at least eight major moves during the marriage as a result of the husband's employment. In 1976, the family moved to Lake City, Florida, where the husband obtained a job as a physical therapist. With the exception of a brief move back to Tennessee in 1979, the husband worked in Lake City until 1988. At that time, the family moved to South Carolina where the husband obtained a job as a health care administrator. In March 1989, the parties separated and the wife and the youngest son moved to Memphis. The wife began training for a position as a flight attendant, but before she completed the six-week training course, the parties reconciled and moved back to Lake City where the husband obtained a job as a clinical administrator. In July 1990, the husband moved to Atlanta for his present job with Healthfocus. He earns a base salary of approximately $4,700 per month, and periodically receives nonguaranteed incentive bonuses from his employer.[1] The husband testified that his actual income for 1989 was $91,000, for 1990 it was almost $77,000, and for the first six or seven months of 1991, it was $45,933.[2]
In contrast, the wife, who is 44 years of age, works in a part-time position for 24 hours a week at $5.00 an hour. She testified that this is the best position she could acquire in Lake City after looking for a job for approximately one year. The record reflects that the wife worked sporadically during the marriage because she shouldered the child care responsibilities and because of the many moves necessitated by the husband's employment. Each job the wife held during the marriage was a secretarial position at or near minimum wage. While the wife indicated that she was only three hours short of an AA degree and would like to go back to school, she also indicated that she had no particular training or experience which would allow her to get a better job.
The only testimony concerning wife's potential for rehabilitation included the following excerpt:
ON DIRECT EXAMINATION OF THE WIFE
Q. Do you have any particular training or experience that would enable you to get a job better than minimum wage?
A. No.
Q. How old was Mr. Anderson when you started working and supporting him to go to school?
A. Twenty, he was middle twenties.
Q. Mrs. Anderson, how old are you right now?
A. Forty-four.
Q. Do you think at forty-four years of age that there's any possibility that you can start some sort of professional training course and get yourself in a position where you could make $45,000 or $50,000 a year?
A. No, sir.

*1111 Q. Is there any prospect in your future that by going to school at forty-four years old you can get in on the ground floor and rise to the top of any profession?
A. Very slim.
.....
ON CROSS EXAMINATION
Q. Okay. Now, as to your education, you don't have a four-year college degree, I understand. Is that correct?
A. Right.
Q. You do almost have your  enough hours to get your Associate of Arts Degree, do you not?
A. I do.
Q. Where are you taking classes in pursuance of your AA degree? Has that been just here?
A. Mainly here.
Q. And you need about three more credit hours until you have your AA degree?
A. Yes.
Q. What are your plans with regard to your future education? Do you plan to go on to a four-year school?
A. I'm unclear about my future plans, but I do want that to be left open as an option.
Q. Okay. Would it be fair to say that you  your plans would include either working or continuing with your education, one or the other?
A. Yes.
The wife submitted a financial affidavit indicating that her financial needs were $1,700 per month. Testimony at trial, however, indicated that this affidavit underestimated her actual needs, and did not reflect the standard of living established during the marriage.
On August 22, 1991, the court entered a final judgment awarding the wife child support in the amount of $750 per month until Bradley, the minor son, graduates from high school and reaches 18 years of age; rehabilitative alimony in the amount of $1,500 per month until October 1995; support alimony in the amount of $500 per month beginning in October 1995 for 18 additional years. The order also distributed certain property of the parties.[3]
On November 20, 1991, the court entered an order on motion for rehearing, modifying the final judgment to require husband to pay $1,000 per month rehabilitative alimony beginning November 26, 1991, until September 26, 1992; $1,750 per month rehabilitative alimony beginning October 26, 1992 until August 26, 1994; $500 per month support alimony beginning October 16, 1995 and continuing for 18 years or until the wife remarries.
In the final judgment, the trial court found as follows:
The Wife is presently working at Lake Shore Hospital earning approximately $5.00 per hour and testified she intends to complete her college education which will require approximately three years. Upon completion of [wife's] college education the parties' minor child will have reached majority age and the Wife will be capable of supporting herself in substantially the same standard of living enjoyed by her during the parties' marriage. The Wife's financial affidavit indicates that with the minor child living at home she requires approximately $1,700.00 to $2,250.00 per month living expenses.
Other than the previously recited testimony of the wife that she did not want to foreclose the possibility of continuing her college education, we find nothing in the record to support the trial judge's conclusion that the wife would complete college and be in a position to support herself in "substantially the same standard of living enjoyed by her during the party's marriage." There is nothing in this record to indicate where the wife would like to attend college, the cost of her education, her proposed area of study, any job market for such an education, or how long it would take the wife to achieve the necessary income level. It might reasonably be inferred that the *1112 nature of the support award contemplated payment for college education, but the basis for such award is not supported anywhere in the record.
This record clearly supports the need for permanent alimony. It is clear that the parties and the trial judge were conscious of the prospect of rehabilitation for the former wife. As we have said before, there is "no error in combining permanent and rehabilitative alimony, provided there is a factual basis and purpose for each." Evans v. Evans, 507 So.2d 1130, 1131 (Fla. 1st DCA 1987).
We set aside the entire award of support for the former wife, and remand the case to the trial judge to conduct such proceedings as may be necessary to fashion a proper support award for the former wife. In all other respects, the judgment is AFFIRMED.
WOLF, J., specially concurs, with opinion.
ZEHMER, J., concurs, with opinion.
WOLF, Judge, specially concurring.
The majority opinion recognizes that the evidence which was presented was totally insufficient to support an award of rehabilitative alimony. The majority, however, invites the trial judge to revisit the entire support award to the wife, and specifically states that "there is no error in combining permanent and rehabilitative alimony, provided there is a factual basis and purpose for each." The opinion of this court, however, should not be viewed as providing broad authority to revisit the issue of rehabilitative alimony as such an interpretation would conflict with many prior decisions of this court. I believe that the trial judge has limited discretion to revisit the rehabilitative alimony issue. This discretion should only be exercised if further evidence adduced on the issue of permanent support indicates that justice would require a more complete development of the rights of the parties as to temporary support. If this case did not involve the equitable jurisdiction of the court, no such consideration would be allowed.
In Apalachicola Northern R.R. Co. v. Tyus, 114 So.2d 33 (Fla. 1st DCA 1959), reversed on other grounds, 130 So.2d 580 (Fla. 1961), this court discussed the appropriate scope of proceedings on remand where a case is reversed for lack of evidence:
When a cause is reversed for lack of evidence, a new trial cannot be awarded on the theory that some additional evidence might have been available at the former trial and will be presented on retrial, or that some such evidence may be found and will be presented on retrial, and that in either event there may be a different result upon the retrial. Absent very limited exceptions which do not appear in this case, we indulge a conclusive presumption that the litigants have presented all available, competent, and material evidence supporting their cause; and failure to do so is at their election and risk. Any other rule would only lead to chaos.
114 So.2d at 38-39 (emphasis in original). This test was cited with approval by this court in Evans v. Delro Indus., Inc., 509 So.2d 1262 (Fla. 1st DCA 1987). The limited exceptions include cases where it affirmatively appears other evidence is available, or where justice may require a more complete development of the rights of the parties. Atlantic & Gulf Properties v. Palmer, 109 So.2d 768, 771 (Fla. 2d DCA 1959). While Apalachicola, Evans, and Atlantic & Gulf Properties do not involve the equitable powers of this court, the policy considerations behind these decisions should not be totally disregarded in equity proceedings. Absent exceptional circumstances which might develop on remand, there is no legal, factual, or public policy basis for allowing the trial court to take further evidence on the issue of rehabilitative alimony. The parties have had their day in court as to this issue. The evidence presented at trial was legally insufficient to permit the trial court to utilize rehabilitative alimony as part of its overall plan. There is no valid reason under these circumstances to allow a party a second bite at the apple on the issue of rehabilitative alimony. Providing for what is effectively *1113 a new trial is both unfair and unnecessarily costly to litigants who are already undergoing financial and emotional stress due to dissolution.[1]
This court has consistently held that where insufficient evidence has been presented to support an award of rehabilitative alimony, the appropriate remedy is to either direct that the rehabilitative alimony be converted to permanent alimony, or to remand for further proceedings on the issue of permanent alimony.[2] No case has specifically allowed further evidence to be taken on the issue of rehabilitative alimony.
The material facts in this case on the issue of alimony, including earning ability, age, health, education, and duration of marriage, are virtually the same as in Akers v. Akers, 582 So.2d 1212, 1218 (Fla. 1st DCA 1991), rev. denied, 592 So.2d 679 (Fla. 1991), where this court directed that rehabilitative alimony be converted to permanent alimony. The only distinguishing facts are that the judge in the instant case ordered rehabilitative alimony at two different levels for different periods, and there is some confusion concerning the wife's needs. In light of these differences, it would be appropriate for the trial court to reconsider and to take further evidence on the appropriate amount of permanent alimony to be awarded. See Wolff v. Wolff, 576 So.2d 852 (Fla. 1st DCA 1991). Further evidence on the issue of temporary support does not presently appear to be warranted.
ZEHMER, Judge (concurring).
I fully concur in Judge Barfield's opinion for the court. The wife's pleadings and testimony placed the matter of rehabilitative alimony in issue and justified the trial court's effort to fashion a plan of rehabilitative alimony whereby the wife could improve her ability to earn and contribute to a larger share of her support needs, even though she might not become able to be fully self-supporting. She had considerable college education, and the trial court obviously had in mind requiring her to complete her education, obtain a degree, and thereby enhance her earning ability. We must reverse, however, because the trial court did not follow the requirements of law in making the award of rehabilitative alimony. Accordingly, I agree to reverse the appealed judgment and remand with leave for the court to permit either party to present further evidence on both rehabilitative and permanent alimony.
I write only to express my disagreement with the view expressed in Judge Wolf's specially concurring opinion that the trial court is not, by this remand, provided "broad authority to revisit the issue of rehabilitative alimony as such an interpretation would conflict with many prior decisions of this court." On the contrary, for the reasons hereafter discussed, I join in the reversal and remand only because under the language of the court's opinion the trial judge is left with broad discretion to conduct such further proceedings and take *1114 additional testimony on the issue of rehabilitative and permanent alimony, including evidence of occurrences and circumstances of the parties since the trial of this case, as may be necessary to do justice in this cause in accordance with the law set forth in the court's opinion.
The opinion in this case sets aside "the entire order of support" and remands the case for the trial judge "to conduct such proceedings as may be necessary to fashion a proper support award for the former wife." The legal effect of this directive, to paraphrase the supreme court's decision in Stossel v. Gulf Life Ins. Co., 123 Fla. 227, 166 So. 821 (1936), is to return the case "to the lower court in the same condition as if the order from which the appeal was taken had not been made," and "[u]nder these conditions, it [will be] proper for the chancellor not only to reconsider that proof which had been submitted in the light of those decisions, but it [will] also [be] the right of either of the parties by acting promptly and after notice to submit any further evidence that might be material to the issues" in the light of the law announced in this opinion. 166 So. at 825. Thus, it is entirely appropriate for the trial judge not only to consider the proof previously submitted but also to consider additional proof on the issue. Schachter v. Schachter, 610 So.2d 730 (Fla. 4th DCA 1992) ("The trial court may take additional testimony or may rely on the record already made if sufficient"); 3 Fla.Jur.2d Appellate Review § 411 (1978). The applicable rule, as stated by the court in Atlantic & Gulf Properties, Inc. v. Palmer, 109 So.2d 768 (Fla. 3d DCA 1959), is that "where there is such an insufficiency of evidence as to leave a material point in controversy uncertain, and such a point is covered by the pleadings, and it affirmatively appears that additional evidence is available, and justice seems to require a more complete development of the rights of the parties under the law, the cause may be remanded with directions to take further evidence on such point." 109 So.2d at 771. In applying the general rules announced in Stossel and similar cases governing proceedings on remand in equity cases to workers' compensation cases, the supreme court explained in Tampa Elec. Co. v. Crosby, 168 So.2d 70 (Fla. 1964):
When a cause is remanded to a deputy with directions to make adequate findings it may be with or without further hearing as the circumstances require. Hardy v. City of Tarpon Springs, Fla. [1955], 81 So.2d 503; Moses v. R.H. Wright, et al., Fla. [1956], 90 So.2d 330; Andrews v. C.B.S. Division [,Maule Industries (Fla. 1960), 118 So.2d 206], supra. The reviewing court may conclude that reconsideration be given without additional testimony. In this event, the restriction on further testimony should be announced in the judgment. However, when the judgment of the reviewing court or commission merely remands for further consideration, without expressly restricting the trier of facts, then the latter may, in his discretion, receive additional evidence. In the instant case we placed no restriction on the deputy when the cause was remanded to him. He was, therefore, at liberty to exercise a sound quasi-judicial discretion to allow additional testimony. He committed no error in receiving the further testimony of the doctors.
168 So.2d at 73.
The cases cited in Judge Wolf's opinion do not prohibit the taking of further evidence on rehabilitative alimony upon remand in this case. In Evans v. Delro Industries, Inc., 509 So.2d 1262 (Fla. 1st DCA 1987), we applied the rule from Apalachicola Northern R.R. Co. v. Tyus, 114 So.2d 33 (Fla. 1st DCA 1959), reversed on other grounds, 130 So.2d 580 (Fla. 1961), quoted in Judge Wolf's opinion, rather than the rule quoted above from Atlantic & Gulf Properties, Inc. v. Palmer, to preclude receiving further evidence on remand only because "Delro's failure to offer additional evidence after being apprised of the deficiencies in its proof must be taken as meaning it had no additional evidence to offer in proof of this essential element." Evans, 509 So.2d at 1264. By way of contrast, in the case now before us, the pleadings and testimony of the former wife concerning her college education and desire to *1115 possibly better her ability to earn income, because it was general and unspecific, did not supply all the information necessary for the trial court to fashion a detailed plan of rehabilitative alimony to permit her to accomplish this end. The record was sufficient, however, to support the notion that more specific evidence was available to allow the court to devise a detailed plan of rehabilitation and make more specific provisions in the final judgment, as required by the law set forth in the per curiam opinion.
Nor do the cases cited in footnote 2 of Judge Wolf's opinion limit this court's power, in this particular case, to permit the taking of additional evidence on the matter of rehabilitative testimony on remand. We have remanded with leave to take additional evidence on the whole matter of support, which judgment of the court in each of those cases should not be read as circumscribing an appellate court's power and discretion to authorize the taking of evidence on remand in other cases where the appellate court concludes that such is necessary to achieve justice in the cause. Whether the trial judge, in reviewing the entire matter of support vacated by this court, should receive further evidence on rehabilitative as well as permanent alimony in this case is purely a matter within the exercise of the trial judge's discretion under the language of remand in the per curiam opinion. Were it otherwise, as suggested by Judge Wolf, the opinion must explicitly set forth this limitation under the supreme court's instructions in Tampa Elec. Co. v. Crosby.
NOTES
[1] Husband also owns Healthfocus stock valued at $22,340.45.
[2] The record reflects that at one point, the husband testified that this figure reflected seven months, but at another point, he testified that this figure represented income through June 30.
[3] While this distribution was appealed, we find no abuse of discretion in the trial court's determination as to property distribution.
[1] It is my belief that as appellate judges, we must become more cognizant of the practical effects that result from our instructions to trial courts upon remanding a case.
[2] Where it has been determined that rehabilitative alimony is inappropriate, this court on remand has directed the lower court as follows:

1. To convert the rehabilitative award to permanent alimony. Akers v. Akers, 582 So.2d 1212 (Fla. 1st DCA 1991), rev. denied, 592 So.2d 679 (Fla. 1991); Greeley v. Greeley, 583 So.2d 1078 (Fla. 1st DCA 1991); Lanier v. Lanier, 594 So.2d 809 (Fla. 1st DCA 1992).
2. To allow evidence to be presented on the amount of permanent alimony which would be appropriate in light of the fact that rehabilitative alimony has been stricken. Wolff v. Wolff, 576 So.2d 852 (Fla. 1st DCA 1991); Evans v. Evans, 507 So.2d 1130 (Fla. 1st DCA 1987).
3. To make further findings in the order without taking further evidence where the order is so vague as to be incapable of allowing this court to conduct appropriate appellate review. Strickler v. Strickler, 548 So.2d 740 (Fla. 1st DCA 1989); Clance v. Clance, 576 So.2d 746 (Fla. 1st DCA 1991); Middleton v. Middleton, 584 So.2d 138 (Fla. 1st DCA 1991); Cloud v. Cloud, 586 So.2d 492 (Fla. 1st DCA 1991).
4. After having the rehabilitative award reversed, to further consider the award in light of this court's opinion. Prom v. Prom, 589 So.2d 1363 (Fla. 1st DCA 1991). While Prom is somewhat unclear, the opinion does not specifically provide for further evidence to be taken on the issue of rehabilitative alimony.